Peter T. Donovan (Arizona State Bar #023183)
The Voightmann Law Firm, P.C.
16700 N. Thompson Peak Pkwy, Suite 110
Scottsdale, Arizona 85260
P: (480) 348-5000
F: (480) 348-5515
peter@voightmannlaw.com

James P. Duffy IV (*Pro Hac Vice* Pending)
K&L Gates LLP
599 Lexington Avenue
New York, New York 10020
P: 212.536.3900
F: 212.536.3901
JP.Duffy@klgates.com

*Attorneys for Applicant*
*Joseph B. Elkind*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| **IN RE APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR DISCOVERY FROM CCBill LLC** | **Case No. ___________** |

**APPLICANT JOSEPH B. ELKIND'S MEMORANDUM OF LAW IN SUPPORT OF AN *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........ 1

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

I. ELKIND AND HIS BUSINESS PARTNER CREATE NETVISION AND TRANSFER ITS OWNERSHIP TO THE BREAKERS STRUCTURE ........ 2

II. DISPUTES ARISE AND BENNETT FREEZES ELKIND OUT OF NETVISION'S MANAGEMENT ........ 3

III. ELKIND LEARNS THAT PTC BREACHED ITS FIDUCIARY DUTIES TO HIM ........ 4

IV. THE SUBPOENA IS NARROWLY TAILORED TO OBTAIN EVIDENCE FROM CCBILL THAT IS RELEVANT TO ELKIND'S FIDUCIARY DUTY CLAIMS AGAINST PTC IN THE BAHAMIAN PROCEEDINGS ........ 4

ARGUMENT ........ 5

I. THE APPLICATION SATISFIES SECTION 1782'S THREE STATUTORY REQUIREMENTS ........ 6

A. Section 1782 and Discovery In Aid of Foreign Proceedings ........ 6

B. Section 1782's Three Statutory Requirements ........ 6

C. The Application Meets Section 1782's Three Statutory Requirements ........ 7

II. THE APPLICATION SATISFIES THE FOUR DISCRETIONARY *INTEL* FACTORS ........ 8

A. The Jurisdictional Reach of the Foreign Tribunal ........ 9

B. The Nature and Receptivity of the Foreign Tribunal to the Discovery Sought ........ 9

C. The Application Does Not Seek to Circumvent Bahamian Proof-Gathering Restrictions ........ 10

D. The Subpoena Is Not Unduly Intrusive or Burdensome ........ 11

III. THE APPLICATION WAS PROPERLY BROUGHT *EX PARTE* ........ 12

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gushlak v. Gushlak*,
486 F. App'x 215 (2d Cir. 2012) ....................12

*In re Application of Republic of Ecuador*,
2011 U.S. Dist. LEXIS 1782 .................... *passim*

*In re Application of Strand Invs. Ltd.*,
No. 09-21985-CIV-MORENO, 2009 U.S. Dist. LEXIS 76445 (S.D. Fl. July 24, 2009) ....................7, 9, 11

*In re Chevron Corp.*,
No. 19-111, 2010 U.S. Dist. LEXIS 47034 (S.D.N.Y. Aug. 6, 2010)....................12

*In re Ex Parte Application of IPCom GMBH & Co. KG*,
No. 5:14-mc-80037-EJD-PSG, 2014 U.S. Dist. LEXIS 50746 (N.D. Cal. April 10, 2014) .................... *passim*

*In re Ex Parte Application of Rigby*,
No. 13cv0271-MMA (MDD), 2013 U.S. Dist. LEXIS 23251 (S.D. Cal. Feb. 19, 2013) ....................7, 8

*In re Gianasso*,
No. C 12-80029 MISC SI, 2012 U.S. Dist. LEXIS 25763 (N.D. Cal. Feb. 28, 2012) ....................11

*In re Int'l Judicial Assistance*,
No. 14-mc-80083-JST, 2014 U.S. Dist. LEXIS 37028 (N.D. Cal. March 19, 2014) ....................8

*In re Mak*,
No. C 12-80118 SI, 2012 U.S. Dist. LEXIS 98577 (N.D. Cal. July 16, 2012) ....................11

*In Re Mesa Power Group, LLC*,
No. 2:11-mc-270-ES, 2013 U.S. Dist. LEXIS 67091 (D.N.J. April 19, 2013) ....................2

*In re Mesa Power Group, LLC*,
No. 2:11-mc-280-ES, 2012 U.S. Dist. LEXIS 179870 (D.N.J. Nov. 20, 2012)....................12

*In re Ontario Principals' Counsel*,
No. 2:13-mc-120-LKK-KJN, 2013 U.S. Dist. LEXIS 179955 (E.D. Cal. Dec. 23, 2013) ....................7

*In re Platebright Ltd.*,
No. 2013-94, 2013 U.S. Dist. LEXIS 184524 (D.V.I. Dec. 18, 2013) .................................13

*In re Société d'Etude de Réalisation et d'Exploitation pour Le Traitment du Mais*,
No. 13-mc-0266, 2013 U.S. Dist. LEXIS 167219 (E.D. Pa. Nov. 22, 2013) .........................13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)........................................................................................ *passim*

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
376 F.3d 79 (2d Cir. 2004)...............................................................................2

**Statutes**

28 U.S.C. § 1782........................................................................................ *passim*

28 U.S.C § 1782(a) .........................................................................................6

## INTRODUCTION

Applicant Joseph B. Elkind ("Elkind") submits this Memorandum of Law In Support of his *Ex Parte* Application Pursuant to 28 U.S.C. § 1782 ("Application") for an Order permitting him to serve a subpoena *duces tecum* and *ad testificandum* upon CCBill LLC ("CCBill"). A draft of the proposed subpoena *duces tecum* and *ad testificandum* ("Subpoena") is attached to the Application as Exhibit A.

## PRELIMINARY STATEMENT

This is a limited-purpose action brought pursuant to 28 U.S.C. § 1782 to obtain evidence from CCBill that Elkind needs to support breach of fiduciary duty claims he has asserted against the Private Trust Corporation Limited ("PTC") in foreign judicial proceedings pending before a Bahamian Court - namely, the Supreme Court, Common Law and Equity Division, in the Commonwealth of the Bahamas ("Bahamian Proceedings").

Elkind commenced the Bahamian Proceedings to recover funds that were fraudulently diverted from a trust structure of which PTC was the Trustee and of which Elkind was a beneficiary ("Breakers Structure") to another trust for which PTC was the trustee, but in which Elkind held no interest. Elkind alleges in the Bahamian Proceedings that PTC knew about or recklessly ignored the fraudulent transfers, which deprived the Breakers Structure of funds to which it was entitled and which constituted a breach of the fiduciary duties PTC owed to Elkind.

Some of the assets which were improperly transferred out of the Breakers Structures were online payment accounts that CCBill processed for companies within the Breakers Structure. Accordingly, while CCBill is not alleged to have engaged in any wrongdoing, it should possess evidence which will show that payment accounts CCBill processed for Breakers Structure companies were improperly transferred to companies outside of the Breakers Structure and that funds were therefore diverted from the Breakers Structure. That evidence is critical to resolving

Elkind's breach of fiduciary duty claims against PTC, because it will help determine PTC's liability and the damages to which Elkind is entitled for his claims.

This Application therefore falls squarely within Section 1782's stated goal of "provid[ing] federal-court assistance in gathering evidence for use in foreign tribunals," *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004); *In re Application of Republic of Ecuador*, No. 2:11-mc-00052 GSA, 2011 U.S. Dist. LEXIS 103360, at *4 (E.D. Cal. Sept. 13, 2011), and serves Section 1782's aim of "'providing [an] efficient means of assistance to participants in international litigation in our federal courts . . . .'" *In Re Mesa Power Group, LLC*, No. 2:11-mc-270-ES, 2013 U.S. Dist. LEXIS 67091, at *8 (D.N.J. April 19, 2013) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)).

Consequently, the Application should be granted and Elkind should be permitted to issue the proposed Subpoena to CCBill.

## BACKGROUND

The following sections provide relevant background information on the underlying dispute in the Bahamian Proceedings. As the scope of the Bahamian Proceedings is broader than this limited-purpose action, only information relevant to the Application is included.

### I. ELKIND AND HIS BUSINESS PARTNER CREATE NETVISION AND TRANSFER ITS OWNERSHIP TO THE BREAKERS STRUCTURE

Elkind is a businessman who resides in Florida. (Elkind Decl. of 05/07/14, ¶ 1). In 1996, Elkind and an associate named John J. Bennett, Jr. ("Bennett") incorporated a Florida company called NetVision Audiotext, Inc. ("NetVision"), of which they were co-owners. (*Id.* ¶¶ 4-5). NetVision provided paid website content to subscribers over the internet. (*Id.* ¶ 6).

In 2000, Elkind and Bennett decided to restructure NetVision's ownership. (*Id.* ¶ 7). To undertake that restructuring, Elkind and Bennett retained an attorney who created the Breakers Structure. (*Id.* ¶¶ 8-9).

The Breakers Structure was a corporate trust structure that was comprised of both trusts and companies that the trusts owned. (*Id.* ¶¶ 11). Some of the companies owned by the trusts within the Breakers Structure accepted online payments from customers that were processed through CCBill. (*Id.* ¶ 15).

Elkind was the beneficiary of some of the trusts within the Breakers Structure ("Elkind Trusts") and Bennett was the beneficiary of the remaining trusts within the Breakers Structure ("Bennett Trusts"). (*Id.* ¶ 13). Together, the Elkind Trusts and Bennett Trusts jointly owned all of the assets of the Breakers Structure. (*Id.* ¶ 14). Accordingly, Elkind and Bennett were joint beneficiaries of the Breakers Structure, and Elkind was entitled to benefit from half of all assets held by that structure. (*Id.* ¶ 21).

The actual ownership details of the Breakers Structure were set forth in a series of agreements that Elkind and Bennett executed, along with their trusts, in or around 2001 ("Ownership Agreements"). (*Id.* ¶ 12). The Ownership Agreements named PTC as trustee for both the Elkind Trusts and the Bennett Trusts. (*Id.* ¶ 23). As discussed further below, PTC, as trustee for the Elkind trusts, owed Elkind independent fiduciary duties that PTC breached.

## II. DISPUTES ARISE AND BENNETT FREEZES ELKIND OUT OF NETVISION'S MANAGEMENT

After the Breakers Structure was created, disputes arose between Elkind and Bennett over the management of NetVision. (*Id*. ¶ 26). Instead of attempting to resolve those disputes openly, Bennett chose to freeze Elkind out of NetVision's management. (*Id*. ¶ 27). The situation culminated in Elkind and NetVision terminating their relationship altogether. (*Id*.).

## III. ELKIND LEARNS THAT PTC BREACHED ITS FIDUCIARY DUTIES TO HIM

After he was frozen out of NetVision, Elkind learned that PTC had breached fiduciary duties it owed to Elkind as beneficiary of the Elkind Trusts and half-beneficiary of the Breakers Structure. (*Id.* ¶ 28).

Specifically, Elkind learned that PTC had knowingly or recklessly allowed Bennett to divert assets out of the Breakers Structure without Elkind's authority to a separate trust structure that only Bennett owned and for which PTC was also the trustee ("Structure II"). (*Id.* ¶¶ 28-29).

For instance, Elkind learned that PTC had knowingly and without authority allowed Bennett to move accounts that CCBill had been processing for companies within the Breakers Structure to companies in Structure II. (*Id.* ¶ 30). The end result was that payments which CCBill had been forwarding to companies within the Breakers Structure were instead paid to companies within Structure II, of which Bennett was the sole beneficiary.[1] (*Id.* ¶¶ 28-30, 37).

After learning this information, Elkind commenced the Bahamian Proceedings against PTC. (*Id.* ¶ 31). Those proceedings remain pending today. (Bethel Decl. of 05/07/14, ¶ 20).

## IV. THE SUBPOENA IS NARROWLY TAILORED TO OBTAIN EVIDENCE FROM CCBILL THAT IS RELEVANT TO ELKIND'S FIDUCIARY DUTY CLAIMS AGAINST PTC IN THE BAHAMIAN PROCEEDINGS

The Subpoena that this Application seeks permission to serve is narrowly tailored to obtain three categories of evidence that will support Elkind's breach of fiduciary duty claims against PTC in the Bahamian Proceedings. The three categories of information the Subpoena seeks are documents sufficient to identify:

1. Any accounts that companies owned by the Breakers Structure held with CCBill ("Relevant Entities") during the relevant time period;

---

[1] For the avoidance of doubt, Elkind does not allege that CCBill was somehow complicit in that scheme, and CCBill is not a named defendant in the Bahamian Proceedings for that reason.

2. Any transfer of the ownership of accounts the Relevant Entities held with CCBill during the relevant time period; and

3. The sums processed through any accounts with CCBill that were transferred from a Relevant Entity to an entity outside of the Breakers Structure.

(App. ¶16, Ex. A). Those three categories of information will assist the Bahamian Court in deciding whether PTC breached the fiduciary duties it owed to Elkind by knowingly or recklessly allowing assets to be diverted out of the Breakers Structure without authority, as well as the damages to which Elkind is entitled for those diversions.

The Subpoena also seeks a 30(b)(6) deposition to address the authenticity of those documents, their contents, and the efforts that were undertaken to collect them. That information will assist the Bahamian court in accepting the documents into the Bahamas Action.

In short, the Subpoena merely seeks evidence that Elkind needs to pursue his breach of fiduciary duty claims against PTC, which is evidence that will help the Bahamian court efficiently and economically resolve Elkind's claim. Granting the Application will therefore serve the exact purpose for which Section 1782 was created.

## ARGUMENT

Section I below demonstrates that the Application meets Section 1782's three statutory requirements. Section II confirms that the Application also satisfies the four discretionary factors annunciated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Lastly, Section III verifies that courts routinely grant *ex parte* applications under Section 1782.

## I. THE APPLICATION SATISFIES SECTION 1782'S THREE STATUTORY REQUIREMENTS

### A. Section 1782 and Discovery In Aid of Foreign Proceedings

Title 28 U.S.C. § 1782 authorizes courts to order parties within their district to provide documentary and testimonial evidence in support of foreign proceedings. *See* 28 U.S.C. § 1782 (2012); *In re Application of Republic of Ecuador*, No. 2:11-mc-00052 GSA, 2011 U.S. Dist. LEXIS 103360, at *4 (E.D. Cal. Sept. 13, 2011) ("The purpose of this section is to provide federal court assistance in the gathering of evidence for use in a foreign tribunal."); *see also Intel Corp.*, 542 U.S. at 247 ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.").

Section 1782(a) specifically provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782(a).

### B. Section 1782's Three Statutory Requirements

Section 1782 sets forth three statutory requirements parties must satisfy to obtain an order permitting discovery. Those three requirements are: "(1) the person from whom the discovery is sought [must] reside[] or . . . [be] found in the district of the district court to which the application is made; (2) the discovery . . . [must be] for use in a proceeding before a foreign tribunal; and (3) the application [must be] made by . . . any interested person." *In re Ex Parte Application of Rigby*, No. 13cv0271-MMA (MDD), 2013 U.S. Dist. LEXIS 23251, at *2 (S.D. Cal. Feb. 19, 2013).

### C. The Application Meets Section 1782's Three Statutory Requirements

The Application meets Section 1782's three statutory requirements.

First, CCbill, which is the entity from whom discovery is sought, maintains its principal place of business at 2353 West University Drive, Tempe, Arizona 85281-7223 and therefore resides within this District.

Second, the discovery is for use in a proceeding before a foreign tribunal because it will be used in support of judicial proceedings pending before a Bahamian court. United States courts routinely conclude that foreign judicial proceedings satisfy Section 1782's "foreign tribunal" requirement. *See In re Ex Parte Application of IPCom GMBH & Co. KG*, No. 5:14-mc-80037-EJD-PSG, 2014 U.S. Dist. LEXIS 50746, at *5 (N.D. Cal. April 10, 2014) (holding that German court proceedings qualify as foreign proceedings for Section 1782's purposes); *In re Ontario Principals' Counsel*, No. 2:13-mc-120-LKK-KJN, 2013 U.S. Dist. LEXIS 179955, at *8 (E.D. Cal. Dec. 23, 2013) (noting that the "court has little difficulty in concluding that contemplated civil litigation in Canada qualifies as a proceeding in a foreign tribunal . . . . "). Moreover, at least one court has found that proceedings before Bahamian courts satisfy Section 1782's foreign tribunal requirement. *See e.g., In re Application of Strand Invs. Ltd.*, No. 09-21985-CIV-MORENO, 2009 U.S. Dist. LEXIS 76445, at *3 (S.D. Fl. July 24, 2009) (presuming that court proceedings in the Bahamas satisfied Section 1782's "foreign tribunal" requirement).

Third, Elkind is the Plaintiff in the Bahamian Proceedings, which makes him an "interested person" for Section 1782's purposes. *See In re Ex Parte Application of Rigby*, 2013 U.S. Dist. LEXIS 23251, at *2 (holding that applicant "is an 'interested party' as he is a party to the [foreign] litigation").

Accordingly, the Application meets all three of Section 1782's statutory requirements.

## II. THE APPLICATION SATISFIES THE FOUR DISCRETIONARY *INTEL* FACTORS

After determining that a party satisfies Section 1782's three statutory requirements, courts must consider the four discretionary factors annunciated by the Supreme Court in *Intel Corp*. *See In re Ex Parte Application of IPCom GMBH & Co. KG*, 2014 U.S. Dist. LEXIS 50746, at *4 (explaining that courts should examine the discretionary *Intel* factors after determining that Section 1782's three statutory requirements have been met); *In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *4 (identifying *Intel* factors as considerations in Court's exercise of "its wide discretion to grant discovery pursuant to section 1782").

In exercising its discretion under Section 1782, a district court should consider the "twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Int'l Judicial Assistance*, No. 14-mc-80083-JST, 2014 U.S. Dist. LEXIS 37028, at *3-4 (N.D. Cal. March 19, 2014).

The four discretionary factors the Supreme Court announced in *Intel* are:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid;
>
> (2) the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance;
>
> (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
> (4) whether the subpoena contains unduly intrusive or burdensome requests.

*In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *4 (citing *Intel Corp.*, 542 U.S. at 264-65). In this case, all four *Intel* factors favor granting the Application.

**A. The Jurisdictional Reach of the Foreign Tribunal**

The first *Intel* factor clearly favors granting the Application because CCBill is not a party to the Bahamian Proceedings. As the Supreme Court explained in *Intel*:

> When the person from whom discovery is sought is a participant in the foreign proceeding…, the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence available in the United States, may be unobtainable absent § 1782(a) aid.

*In* re *Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *6 (quoting *Intel Corp.*, 542 U.S. at 264).

The first *Intel* factor therefore asks whether the person or entity from whom discovery is sought is a party to the foreign litigation. CCBill is not a party to the Bahamian Proceedings, so this factor favors granting the Application. *See id.*, at *6 (holding that the party from whom discovery was sought was "not a party to the international . . . [proceedings] and therefore this factor weighs in [the applicant's] favor"); *see also In re Application of Strand Invs. Ltd.*, 2009 U.S. Dist. LEXIS 76445, at *3 (holding that because party from whom discovery was sought was "*not* a participant in the proceeding in the Bahamas" she is "therefore outside the Supreme Court of the Bahamas' jurisdictional reach").

**B. The Nature and Receptivity of the Foreign Tribunal to the Discovery Sought**

The second *Intel* factor examines the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal to the requested discovery. This factor favors granting the Application as well.

Here, the foreign tribunal is a common-law trial court, and the evidence the Application seeks is directly relevant to the breach of fiduciary duty claims against PTC that court must resolve. The evidence the Subpoena seeks will identify: (1) the Breakers Structure companies

that held accounts with CCBill; and (2) whether ownership of those accounts changed without Elkind's consent; which (3) is relevant to establishing PTC's liability. That evidence will also show the sums that were processed through any accounts that were moved out of the Breakers Structure, which will help establish the damages for which PTC will be liable.

Moreover, there is no reason to think that the Bahamian court would be unreceptive or hostile to evidence directly relevant to the claims before it. *See In re Ex Parte Application of IPCom GMBH & Co. KG*, 2014 U.S. Dist. LEXIS 50746, at *7 (holding that this factor favored Applicant because the information sought was "relevant to the [foreign] litigation and would assist a damage assessment in the case"). Consequently, the second *Intel* factor favors granting the Application as well.

**C. The Application Does Not Seek to Circumvent Bahamian Proof-Gathering Restrictions**

The third *Intel* factor weighs in favor of the Application as well, because the Subpoena is not designed to circumvent any Bahamian proof-gathering restrictions. First, the Bahamas is a common law jurisdiction that generally allows the collection and introduction of relevant documentary and testimonial evidence in civil proceedings. (Bethel Decl. ¶¶ 21-25).

Second, the Bahamas has enacted a law called the Bahamian Evidence (Proceedings in Other Jurisdictions) Act, 2000, which authorizes Bahamian courts to provide judicial evidentiary assistance to foreign tribunals in civil matters. That law mirrors Section 1782 and therefore demonstrates a favorable attitude towards foreign judicial assistance. (*Id.* ¶¶ 26-27).

Third, Section 1782 does not impose any foreign discoverability requirement, and Section 1782 applications can be granted even when the evidence sought could not be obtained under the procedures of the foreign court to which the evidence will be introduced. *See In re Ex Parte Application of IPCom GMBH & Co. KG*, 2014 U.S. Dist. LEXIS 50746, at *7-8 (noting

that "Section 1782 does not require the discovery sought to be discoverable in the foreign courts"); *see also In re Mak*, No. C 12-80118 SI, 2012 U.S. Dist. LEXIS 98577, at *3 (N.D. Cal. July 16, 2012) (relating that Section 1782 imposes no foreign discoverability rule and that "there is no requirement that the information sought be discoverable under the law governing the foreign proceeding"); *In re Gianasso*, No. No. C 12-80029 MISC SI, 2012 U.S. Dist. LEXIS 25763, at *3 (N.D. Cal. Feb. 28, 2012) (relating same). Accordingly, even if there was some Bahamian rule against the collection of relevant evidence – and there is not – that rule would not weigh against granting this Application. *See id.*

Consequently, the third discretionary *Intel* factor favors the Application as well. *See In re Application of Strand Invs. Ltd.*, 2009 U.S. Dist. LEXIS 76445, at *3 (granting Section 1782 Application seeking documents and a deposition and holding that the "requested discovery would likely not meet procedural roadblocks in the Bahamas").

**D. The Subpoena Is Not Unduly Intrusive or Burdensome**

Lastly, the Fourth *Intel* factor also favors granting the Application because the Subpoena is narrowly tailored to obtain documents from CCBill that are sufficient to identify the Breakers Structure entities for which CCBill processed accounts, whether the ownership of any such accounts changed, and if so, the sums that were processed through those accounts after ownership was changed. The Subpoena therefore seeks evidence that is directly relevant to Elkind's breach of fiduciary duty claims against PTC in a minimally intrusive fashion. *See In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *8 ("And given the relevance of the information, it is arguably less likely that issuance of the subpoena will result in undue intrusion or burden . . . .").

Consequently, all four discretionary *Intel* factors favor granting the Application, and Elkind should be permitted to serve the Subpoena on CCBill.

## III. THE APPLICATION WAS PROPERLY BROUGHT *EX PARTE*

Lastly, the *ex parte* nature of the Application does not impact its propriety, because "an *ex parte* application is an acceptable method for seeking discovery pursuant to section 1782." *In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *5; *In re Ontario Principals' Council*, 2013 U.S. Dist. LEXIS 179955, at *7 ("An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782."); *In re Roebers*, No. No. C12-80145 MISC RS (LB), 2012 U.S. Dist. LEXIS 97008, at *4-5 (N.D. Cal. July 11, 2012) (stating same); *see In re Ex Parte Application of IPCom GMBH & Co. KG*, 2014 U.S. Dist. LEXIS 50746, at *4 ("It is common for parties to request and obtain orders authorizing [Section 1782] discovery *ex parte*."); *In re Société d'Etude de Réalisation et d'Exploitation pour Le Traitment du Mais*, No. C13-80261-MISC LHK (HRL), 2013 U.S. Dist. LEXIS 169009, at *1 (N.D. Cal. Nov. 21, 2013) (relating that "[*e*]*x parte* applications are appropriate for seeking discovery pursuant to § 1782" and that "it is common for the process of presenting the [Section 1782] request to a court and to obtain the order authorizing discovery to be conducted *ex parte*"); *see also Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (concluding that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*"); *In re Mesa Power Group, LLC*, No. 2:11-mc-280-ES, 2012 U.S. Dist. LEXIS 179870, at *9-10 (stating that "[a]pplications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte*) (D.N.J. Nov. 20, 2012) (citing *In re Chevron Corp.*, No. 19-111, 2010 U.S. Dist. LEXIS 47034, at *16 (S.D.N.Y. Aug. 6, 2010)); *In re Platebright Ltd.*, No. 2013-94, 2013 U.S. Dist. LEXIS 184524, at *12 n.2 (D.V.I. Dec. 18, 2013) (relating that "it is common for parties to request and obtain orders authorizing discovery *ex parte*" in Section 1782 proceedings); *In re Société d'Etude de Réalisation et d'Exploitation pour Le Traitment du Mais*, No. 13-mc-0266, 2013 U.S.

Dist. LEXIS 167219, at *5 n.1 (E.D. Pa. Nov. 22, 2013) (relating that in Section 1782 actions, "there is no reason to suspect that proceeding on an *ex parte* basis is improper").

The rationale for granting *ex parte* applications under Section 1782 is simple: "ex parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *4-5; *see In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) (noting that *ex parte* Section 1782 requests are proper because the recipient can raise objections and move to quash after service); *In re Ex Parte Application of IPCom GMBH & Co. KG*, 2014 U.S. Dist. LEXIS 50746, at *4-5 (explaining same).

Accordingly, there is nothing unfair or improper about granting the Application *ex parte*, and if CCBill feels it has legitimate bases for opposing the narrow discovery sought, CCBill may interpose those arguments on a motion to quash.

**CONCLUSION**

For the reasons set forth above, the *Ex Parte* Application should be granted and the Applicant should be permitted to serve the Subpoena attached as Exhibit A to the Application.

Respectfully submitted,

Dated: May 8, 2014

/s/ Peter T. Donovan

Peter T. Donovan
The Voightmann Law Firm, P.C.
16700 N. Thompson Peak Pkwy, Suite 110
Scottsdale, Arizona 85260
P: (480) 348-5000
F: (480) 348-5515
peter@voightmannlaw.com

James P. Duffy IV (*Pro Hac Vice* Pending)
K&L Gates LLP
599 Lexington Avenue
New York, New York 10020
P: 212.536.3900
F: 212.536.3901
JP.Duffy@klgates.com

*Attorneys for Applicant Joseph B. Elkind*